**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JONATHON GADRA-LORD,** | : | **Civil No. 1:15-CV-540** |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **DEPUTY VUKSTA, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

This is a civil action brought by Jonathon Gadra-Lord, an inmate in the Pennsylvania Department of Corrections.  Gadra-Lord brought this action against a number of employees with the Pennsylvania Department of Corrections and others, including Dr. Lisiak, a physician providing medical services to inmates at the State Correctional Institution at Mahanoy (SCI-Mahanoy), where Gadra-Lord is housed.

Gadra-Lord initiated this action by filing a complaint on March 18, 2015. (Doc. 1.) He subsequently amended the complaint twice, with the most recent amended complaint having been filed on June 23, 2015.  (Docs. 10, 12.)  The remaining correctional defendants, Lieutenants Biscoe, Butts and Wagner, answered the amended complaint on September 29, 2015.  (Doc. 22.)

Rather than answer, Dr. Lisiak has filed two potentially dispositive motions. (Docs. 18, 23.) In the first, Dr. Lisiak moves the Court to dismiss Gadra-Lord's claims against him on the grounds that Gadra-Lord has previously filed three non-meritorious lawsuits that were dismissed for failure to state a claim, and he should now be prohibited from filing new lawsuits *in forma pauperis* pursuant to 28 U.S.C. § 1915(g), a federal law intended to restrict and limit serial frivolous litigation brought by inmates.  (Doc. 18.)

In the second motion, Dr. Lisiak moves to have Gadra-Lord's claims against him dismissed either because he has failed to exhaust his available administrative remedies prior to bringing suit, or because his claims against Dr. Lisiak for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution fail to state a claim upon which relief can be granted.  (Doc. 23.)

Upon consideration, we find that Dr. Lisiak has failed to demonstrate that Gadra-Lord is currently subject to the three-strikes policy prescribed by 28 U.S.C. § 1915(g).  We find that Gadra-Lord has at most one qualifying strike stemming from an earlier case that was either dismissed for failure to state a claim. Accordingly, it will be recommended that Gadra-Lord's claims not be dismissed under the three-strikes rule prescribed by 28 U.S.C. § 1915(g).

Regarding the second motion, a motion to dismiss, we find that Gadra-Lord has sufficiently raised questions regarding whether administrative remedies were actually available to him in this case, and because he has sufficiently raised this issue we conclude that the amended complaint should not be disposed of at the pleading stage for failure to exhaust; instead, this is an issue that may be addressed, if appropriate, through a motion for summary judgment and a plenary hearing, if necessary.  Likewise, we agree with Gadra-Lord that he has sufficiently articulated a claim alleging Eight Amendment violations against Dr. Lisiak, and thus will recommend that the motion to dismiss for failure to state a claim be denied for this reason as well.

## II.   <u>BACKGROUND</u>

In the amended complaint, Gadra-Lord alleges that he suffers from a seizure disorder that that caused him to be restricted from being housed on a top bunk in his cell.  He claims that in May 2013, he was returned to his cell and ordered to climb to the top bunk or he would be given a misconduct citation.  Gadra-Lord alleges that he subsequently fell from the top bunk, causing temporary paralysis. He claims he was air lifted to a regional hospital where he was treated in the trauma unit for five days and subjected to a number of tests.  He claims this experience left him traumatized.  (Am. Compl. ¶¶ 1-2.)

Gadra-Lord claims that he was thereafter returned to SCI-Mahanoy where he was placed in the prison infirmary, where he required assistance to walk. During this time he alleges that he "was subject to a multitude of inhumane treatments and conditions," including starvation for days until he was strong enough to crawl to his cell door to receive meals. He also claims he was denied basic hygiene in the infirmary, where he had almost no access to showers, was not provided clean clothing, and where he was forced to crawl to use the toilet, and then was unable to clean himself because he was not provided any toiletries. (*Id.* ¶¶ 3-5.) Gadra-Lord claims that during his time in the prison infirmary, he was "never given any medical help or physical therapy or meds." (*Id.* ¶ 7.)

## III.   <u>DISCUSSION</u>

### A.   **Motion to Revoke Gadra-Lord's Status as an Indigent Plaintiff Pursuant to 28 U.S.C. § 1915(g).**

Dr. Lisiak first moves to dismiss this action on the grounds that Gadra-Lord's status as an *in forma pauperis* inmate-plaintiff should be revoked pursuant to 28 U.S.C. § 1915(g) because he has had at least three prior actions or appeals dismissed because the claims he brought were frivolous, malicious, or failed to state a claim upon which relief could be granted. This motion should be denied.

Since 1892, Congress has taken steps "designed to ensure that indigent litigants have meaningful access to the federal courts," *Neitzke v. Williams*, 490 U.S. 319, 324 (1989), and provided in 28 U.S.C. § 1915 that " 'no citizen shall be

denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because . . . poverty makes it impossible . . . to pay or secure the costs' of litigation." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (alterations in original) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)).  The statute permits "[a] prisoner seeking to bring a civil action or [to] appeal a judgment in a civil action" to "proceed without prepayment of fees or security therefor," if he can show that he is unable to pay the required fees.  28 U.S.C. § 1915(a)(2).

At the same time, Congress came to recognize that allowing unlimited access to federal courts without the burden of bearing any costs imposed a kind of moral hazard, since "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton*, 504 U.S. at 31 (quoting *Neitzke*, 490 U.S. at 324).  Accordingly, Congress included a subsection in the statute to allow courts to dismiss an action brought by a plaintiff *in forma pauperis* "if [the court is] satisfied that the action is frivolous or malicious." *Id.*  One particular category of *in forma pauperis* litigation that was singled out as problematic was litigation brought by inmates, and the Supreme Court has noted that "[p]risoner litigation continues to account for an outsized share of filings in federal district courts." *Jones v. Bock*, 549 U.S. 199, 203 (2007) (internal

quotation marks omitted).   Accordingly, to address the rash of "substantively meritless prisoner claims that have swamped the federal courts," *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000) (original emphasis omitted), Congress enacted the Prison Litigation Reform Act, 42 U.S.C. § 1997, in order to "filter out the bad claims and facilitate consideration of the good." *Bock*, 549 U.S. at 204.

The PLRA provide an exhaustion requirement that barred inmates from bringing federal civil actions until they had exhausted available administrative remedies.  42 U.S.C. § 1997e(a).  The PLRA also includes a screening mechanism whereby courts are directed to dismiss actions or appeals *sua sponte* if the action is found to be "frivolous" or "malicious" or "fails to state a claim upon which relief may be granted," or where the litigation "seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §§ 1915(e)(2)(B)(i), (e)(2)(B)(ii), 1915A(b); 42 U.S.C. § 1997(c).  *See also Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).

Finally, Congress provided for a "three strikes" rule intended to restrict litigation by inmates who had demonstrated a history of bringing meritless litigation in federal court.   *Ball*, 726 F.3d at 452.   Under that three-strikes provision, a prisoner seeking to proceed *in forma pauperis i*s prohibited from

> Bring[ing] a civil action or appeal[ing] a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on

the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).[1]

Interpreting this statute, the Third Circuit has instructed that

a strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is 'frivolous,' 'malicious,' or 'fails to state a claim' or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), 1915(e)(2)(B)(ii), or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Byrd v. Shannon*, 715 F.3d 117, 126 (3d Cir. 2013).   Under this approach, it has been held that a dismissal order based on an appeal which simply refers to 28 U.S.C. § 1915(e)(2)(B), without specifying one of the subsections of the statute which also identify the dismissal as entered because the appeal was "frivolous" or "malicious" or "fail[ed] to state a claim" will not constitute a strike.   *Id.* at 127. Thus, where a prior dismissal order does not "more precisely" indicate that dismissal is based upon one of these enumerated bases, courts are unable to determine "with certainty that [a plaintiff's prior action] was dismissed for reasons warranting a strike under § 1915(g).   *Id.* at 126.

---

[1]  Notably , this restriction applies only to litigation brought *in forma pauperis*, and does not extend to prohibit inmates subject to the three-strikes provision from filing suit if the inmate pays the required filing fee.   *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) (en banc) ("It is important to note that § 1915(g) does not block a prisoner's access to the federal courts.   It only denies the prisoner the privilege of filing before he has acquired the necessary filing fee.").

Construing the statute, it has been held that while dismissal of a prior action where an inmate had failed to exhaust administrative remedies may in some cases qualify as a strike for purposes of § 1915(g), "dismissal based on a prisoner's failure to exhaust administrative remedies does not constitute a PLRA strike, unless a court explicitly and correctly concludes that the complaint reveals the exhaustion defense on its face *and the court then dismisses the unexhausted complaint for failure to state a claim*."  *Ball v. Famiglio*, 726 F.3d 448, 460 (3d Cir. 2013), *cert. denied*, -- U.S. -- , 134 S.Ct. 1547, 188 L.Ed. 2d 565 (2014) (emphasis added).

Similarly, a summary judgment dismissal of an action typically will not count as a strike under § 1915(g) unless the summary judgment decision, on its face, dismissed the action as frivolous, malicious or for failure to state a claim. *Parks v. Samuels*, 540 F. App'x 146, 150 (3d Cir. 2014) (citing *Blakely v. Wards*, 738 F.3d 607 (4th Cir. 2013) (en banc).

Furthermore, by its terms, § 1915(g)

> speaks of possible strikes only in terms of "an action or appeal ... that was dismissed" on one of the enumerated grounds, 28 U.S.C. § 1915(g). Thus, "[u]nder the plain language of the statute, only a dismissal may count as a strike, not the affirmance of an earlier decision to dismiss." *Jennings v. Natrona Cnty. Det. Center Med. Facility,* 175 F.3d 775, 780 (10th Cir.1999). Also, ..., "[t]he choice of the word 'dismiss' rather than 'affirm' in relation to appeals was unlikely an act of careless draftsmanship," but rather may be "most plausibly understood as a reference to section 1915(e)(2), which requires the court to '*dismiss* the case at any time if the court

8

> determines that ... the action *or appeal* ... is frivolous or malicious;
> [or] fails to state a claim on which relief may be granted.' "
> *Thompson,* 492 F.3d at 436 (emphasis and alterations in original)
> (quoting 28 U.S.C. § 1915(e)(2)(B)(I), (e)(2)(B)(iii)). Therefore, a
> dismissal of an appeal on one of the enumerated grounds counts as a
> PLRA strike, while an affirmance of a district court's dismissal does
> not, even if the underlying dismissal itself counts as a strike.

*Ball,* 726 F.3d at  464.

Finally, the dismissal of an action without prejudice may nonetheless qualify as a strike under § 1915(g), provided that the other requirements of the statute are met and the action is dismissed explicitly because it is "frivolous," "malicious," or "fails to state a claim." *Childs v. Miller,* 713 F.3d 1262, 1266 (10th Cir.2013); *Smith v. Veterans Admin.,* 636 F.3d 1306, 1313 (10th Cir.2011); *Day v. Maynard,* 200 F.3d 665, 667 (10th Cir.1999) (per curiam). However, a dismissal for failure to prosecute, standing alone, may not qualify as a strike under § 1915(g), unless there is also a finding of frivolousness. *Butler v. Dep't of Justice,* 492 F.3d 440, 441 (D.C. Cir. 2007) *holding modified by Mitchell v. Fed. Bureau of Prisons,* 587 F.3d 415 (D.C. Cir. 2009).

Adhering to these legal guidelines, we find that Dr. Lisiak has not demonstrated that Gadra-Lord's claims in this litigation must be dismissed pursuant to the three-strike rule prescribed by 28 U.S.C. § 1915(g).  Dr. Lisiak bases his motion upon two orders of the district court dismissing prior actions, as well as a decision by the Third Circuit Court of Appeals "affirm[ing] the District

9

Court's decision" in one of those cases.  (Doc. 18, p. 3.)  Yet, as explained below, only one of these actions could possibly qualify as a strike under 28 U.S.C. § 1915(g).

In the first case, *Gadra v. Eiswerth*, et al., No.4:10-cv-00236 (M.D. Pa. 2011), Gadra-Lord was granted permission to proceed *in forma pauperis* and, after the court screened the initial complaint and Gadra-Lord filed an amended complaint, the court ordered the amended complaint served upon the defendants. (*Id.*, doc. 4, 6, 11.)  The defendants did not move to dismiss, but instead answered the plaintiff's complaint, and indeed, engaged in affirmative pre-trial discovery with the plaintiff.  (*Id.*, docs. 17 (answer) and 18 "Notice of Serving Discovery.")

Following discovery and other litigation, the defendants moved for summary judgment on Gadra-Lord's claims, arguing that Gadra-Lord had failed to comply with discovery requests, and had effectively conceded that he had failed to exhaust his administrative remedies prior to bringing suit.  (Doc. 39, 40.)  The defendants alternatively moved for entry of summary judgment not because Gadra-Lord's lawsuit was "frivolous," "malicious," or because it otherwise failed to state a claim, but because they contended that "there exist[ed] no genuine issue of material fact from which to find Defendants violated Plaintiff's Eighth Amendment rights[.]"  (Doc. 40, at p. 3.)  The defendants supported this motion in large measure by arguing that the evidence produced in discovery failed to bear out

10

what Gadra-Lord had alleged with respect to injuries and medical treatment – they did not argue that Gadra-Lord's claims were, on their face, baseless or otherwise malicious or frivolous.  (*Id.*)

Despite having litigated the case for a number of months, including seeking relief in the Court of Appeals, Gadra-Lord inexplicably failed to file a brief in opposition to the defendants' motion for summary judgment in accordance with the Local Rules of this Court, and even after being specifically ordered to do so.  (*Id.*, docs.  41, 42.)    Accordingly,  the  undersigned  prepared  a  report  and recommendation in which the court concluded that Gadra-Lord had failed to prosecute his claims, and through his silence had effectively conceded that he had failed  to  exhaust  his  administrative  remedies,  and  had  otherwise  failed  to demonstrate the existence of a disputed issue of material fact in support of his Eighth Amendment claims.  (*Id.*, doc. 42.)  Therefore, it was recommended that the district court grant the defendants' motion for summary judgment.  After Gadra-Lord failed to oppose the report and recommendation, on January 24, 2011, approximately one year after Gadra-Lord filed suit, the district court entered an order adopting the report and recommendation and granted judgment in favor of the defendants.  (*Id.*, doc. 43.)  Nowhere in the district court's decision is it indicated that the court found that Gadra-Lord's claims should be dismissed for reasons that would warrant a strike under 28 U.S.C. § 1915(g).  As explained

above, a summary judgment dismissal of an action typically will not count as a strike under § 1915(g) unless the summary judgment decision, on its face, dismissed the action as frivolous, malicious or for failure to state a claim." *Parks v. Samuels*, 540 F. App'x 146, 150 (3d Cir. 2014) (citing *Blakely v. Wards*, 738 F.3d 607 (4th Cir. 2013) (en banc). Here, there is no indication that the court made such a finding.

The second case Dr. Lisiak relies upon, *Gadra-Lord v. Varano et al.*, No. 1:12-cv-2426 (M.D. Pa. 2012), is a civil action that Gadra-Lord filed in this court on December 5, 2012. Because Gadra-Lord was seeking to proceed *in forma pauperis*, the court screened the complaint and found it lacking in a number of respects. Accordingly, although Gadra-Lord was authorized to *proceed in forma pauperis*, he was instructed to file an amended complaint within 20 days to cure the pleading defects. (*Id.*, doc. 8.) Gadra-Lord complied with this guidance and filed a timely amended complaint. (*Id.*, doc. 9.) This amended complaint was also screened, and the undersigned recommended that although the plaintiff's claims be dismissed as to certain supervisory defendants, the complaint should be served upon the remaining defendants. (*Id.*, doc. 16.) This recommendation was adopted, and the defendants waived service. (*Id.*, docs. 17, 19, 21.)

The defendants subsequently moved to have the case dismissed. (*Id.*, doc. 22.) The undersigned issued a report and recommendation recommending that the motion be granted and that the complaint be dismissed for failure to state a claim with respect to all claims, but that the dismissal be without prejudice to Gadra-Lord endeavoring to file another amended complaint with respect to his Eighth Amendment claims. (*Id.*, doc. 26.) This recommendation was adopted in part, and the plaintiff was directed to file an amended complaint. (*Id.*, doc. 30.) The plaintiff, perhaps presciently, filed an amended complaint even before the district court had entered its order. (*Id.*, doc. 28.) The court screened this new pleading, and recommended that it be dismissed with prejudice because of a host of deficiencies with respect to the legal claims alleged. (*Id.*, doc. 32.) Gadra-Lord objected, and the district court considered these objections before issuing an order dismissing the re-filed claims with prejudice pursuant to Rule 12(b)(6). (*Id.*, doc. 34, 35.) This dismissal, which came following a screening that found the claims legally flawed, arguably counts as a strike under § 1915(g).

Notably, the third "strike" that Dr. Lisiak urges upon the court comes from Gadra-Lord's unsuccessful appeal of that dismissal order. The defendant argues that "[a]n appeal of a dismissed action that is dismissed is a separate strike." (Doc. 18, p. 3.) In making this assertion, Dr. Lisiak relies upon two cases from courts outside the Third Circuit, and does not examine the basis for the Third Circuit's

dismissal order.  Review of the docket makes clear that the Third Circuit dismissed Gadra-Lord's appeal not because he had raised frivolous issues, had proceeded maliciously, or had otherwise failed to make out a legal claim, but instead did so because Gadra-Lord had "fail[ed] to timely prosecute insofar as appellant failed to pay the requisite fee or file motion for leave to proceed *in forma pauperis* with all necessary forms attached."  (No. 1:12-CV-2426 (M.D. Pa.) doc. 38.)  The court of appeals never considered the merits of the appeal, much less concluded that the appeal should be dismissed for one of the grounds that could constitute a strike for § 1915(g) purposes.

As noted above, a dismissal order based on an appeal which simply refers to 28 U.S.C. § 1915(e)(2)(B), without specifying one of the subsections of the statute which also identify the dismissal as entered because the appeal was "frivolous" or "malicious" or "fail[ed] to state a claim" will not constitute a strike.  *Byrd*, 715 F.3d at 127.  Thus, where a prior dismissal order, such as the appeal order on which Dr. Lisiak relies, does not "more precisely" indicate that dismissal is based upon one of these enumerated bases, courts are unable to determine "with certainty that [a plaintiff's prior action] was dismissed for reasons warranting a strike under § 1915(g).  *Id.* at 126.

In sum, assuming for purposes of this report and recommendation that the district court's dismissal of Gadra-Lord's 2012 civil action constituted a strike for

§ 1915(g), it does not appear that the dismissal of Gadra-Lord's 2010 litigation or the appeal of his 2012 civil action qualify as strikes, and thus the court should therefore deny Dr. Lisiak's motion to revoke Gadra-Lord's *in forma pauperis* status.

### B.    Motion to Dismiss

In his second motion, Dr. Lisiak moves the court to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for two reasons.   First, Dr. Lisiak argues that Gadra-Lord failed to exhaust his administrative remedies, in violation of the Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA"), and thus the case must be dismissed.   In making this argument, Dr. Lisiak ignores the fact that nothing in the amended complaint reveals on its face that Gadra-Lord failed to exhaust, and Dr. Lisiak instead invites the court to consider facts and evidence outside of the pleadings to make this determination – something that courts typically will decline to do because a failure-to-exhaust defense is an affirmative defense that must be pleaded and proved by the defendant, and often will rely upon consideration of facts outside of the pleadings themselves, which is usually a matter properly reserved for summary judgment.

Secondarily, Dr. Lisiak argues that Gadra-Lord has failed to plead a cause of action for violations of the Eighth Amendment.  It is recommended that the Court deny the motion in both respects.

### 1.    Failure to Exhaust

The PLRA requires that prisoners present their claims through an administrative grievance process prior to seeking redress in federal court. Specifically, the Act provides that:

> No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  In accordance with the PLRA, prisoners must comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").

16

As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory.  *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).  Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts.  *See Small v. Camden County*, 728 F.3d 265, 270-71 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted.  *Id.* at 90; *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him.  *Woodford*, 548 U.S. at 95.  However, if an inmate shows that the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement.  *Brown v.*

17

*Croak*, 312 F.3d 109, 112-13.  Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." *Small*, 728 F.3d. at 273.  If there is an impediment to an inmate's ability to grieve a matter, the inmate is required to pursue such grievance once the impediment has been removed. *Oliver v. Moore*, 145 F. App'x 731, 735 (3d Cir. 2005).

The Department of Corrections maintains a grievance system that offers inmates a three-phase grievance and appeals procedure. *See* DC-ADM 804; *see also* 37 Pa. Code § 93.9(a).  Pursuant to DC-ADM 804, inmates must first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred.  If the inmate is dissatisfied with the initial review of his grievance, he may appeal the decision to the Facility Manager (Superintendent).  Upon receiving a decision from the Superintendent, the inmate may file an appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 working days of the Superintendent's decision.  Id.  Again, compliance with the DOC's administrative grievance process is mandatory prior to bringing suit in federal court, and the failure to do so will result in that suit being subject to dismissal pursuant to the clear terms of the PLRA.  Nyhuis, 204 F.3d at 73.

18

"In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss." *Brown*, 312 F.3d at 111; *see also Ray*, 285 F.3d at 295 n.8.  In this case, however, Dr. Lisiak is endeavoring to rely on evidence regarding the scope of Gadra-Lord's grievances that were exhausted within the DOC in order to establish that no claims against Dr. Lisiak were ever presented.  Gadra-Lord has responded with a fact-bound claim by asserting that he also filed grievances to which he was never provided responses, and thus was unable to perfect any appeals of his grievances against Dr. Lisiak to SOIGA, which he contends caused the administrative remedy process to have become unavailable to him.  Whether Gadra-Lord can demonstrate that this is true is something that we believe cannot be resolved on the pleadings, which do not on their face make clear either that Gadra-Lord failed to exhaust, or that the administrative remedy process was available to him with respect to his claims against Dr. Lisiak.

If the actions of prison officials caused the plaintiff to procedurally default on a grievance, the inmate will not be held to strict compliance with the exhaustion requirement.  *Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).  At a minimum, at this stage of the litigation, the conflicting accounts of the grievance process, and Gadra-Lord's compliance with this process, raise factual issues which should be addressed either on summary judgment or through a plenary hearing before the

legal question of exhaustion can be resolved.[2]   In this setting, where there are unresolved factual disputes, we are cautioned to engage in an evidentiary proceeding to resolve the application of this affirmative defense, *Small*, 728 F.3d at 273, and the defendant's motion to dismiss on this issues would be inappropriate at this juncture.

### 2.     Rule 12(b)(6) – Standard of Review

Dr. Lisiak also argues that Gadra-Lord has failed to comply with the requirement that he plead a cause of action upon which relief can be granted for violations of the Eighth Amendment, and thus contends that dismissal is also appropriate on the merits.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45–

---

[2] Recognizing the importance of this affirmative defense, the parties are strongly encouraged to address the defense promptly, either through summary judgment or by way of a plenary proceeding.

46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. *Id.* at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider

matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994).

### 3.    Eighth Amendment – The Legal Standard

Gadra-Lord brings his claims against Dr. Lisiak pursuant to 42 U.S.C. § 1983, which is the statutory vehicle for bringing claims alleging constitutional violations against a state actor. In this case, Gadra-Lord claims that Dr. Lisiak violated his rights under the Eighth Amendment by demonstrating deliberate indifference to his serious medical needs, which allegedly arose after he suffered a seizure, was briefly paralyzed, hospitalized at the Lehigh Valley Medical Center, and returned to convalesce in the infirmary at SCI-Mahanoy where Gadra-Lord claims he was not provided any medical care or assistance despite manifestly needing it.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." With respect to prisoner confinement, the Eighth Amendment obligates the government "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also Farmer v. Brennan*, 511 U.S. 825,

832-33 (1994); *Reynolds v. Wagner*, 128 F.3d 166, 172-73 (3d Cir. 1997).   "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.   In the worst cases, such a failure may actually produce physical torture or a lingering death."   *Estelle*, 429 U.S. at 103 (quoting *In re Kemmler*, 136 U.S. 436, 447 (1890)).

In *Estelle*, the United States Supreme Court held that prison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit "deliberate indifference to serious medical needs of prisoners."   429 U.S. at 104.   The standard that *Estelle* established "requires [both that there be] deliberate indifference on the part of the prison officials and [that] the prisoner's medical needs . . . be serious."   *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978)).   Under this two-prong test, an inmate must first objectively establish a deprivation of medical care, or the result of such deprivation, the result of which was sufficiently serious to implicate a constitutional violation.   *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).   An inmate's medical need is serious under this standard when it "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention."   *Lanzaro*, 834 F.2d at 347 (citations and internal quotations omitted).   Secondly, the inmate-

plaintiff must show that prison officials subjectively knew of the deprivation and "disregard[ed] an excessive risk to [the] inmate['s] health or safety." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Thus, in the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle*, 429 U.S. at 105. To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Gadra-Lord will thus be required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999*); see also Woloszyn v. County of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (for a claim of deliberate indifference against a prison official to survive, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does

not serve any penological purpose, . . . violates the Eighth Amendment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

In summary, deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). The Third Circuit has held that prison officials act with deliberate indifference when (1) reasonable requests for medical treatment are denied, exposing the inmate to undue suffering or the threat of further injury; (2) necessary medical treatment is delayed for non-medical reasons; (3) arbitrary or burdensome procedures are erected to create treatment delays to suffering prisoners; and (4) inmates are presented from receiving access and treatment from capable medical professionals. *See Lanzaro*, 834 F.2d at 346-47.

At the same time, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional

violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment).   Instead, deliberate indifferent represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Gadra-Lord brought this action claiming that he suffered from a seizure and paralysis that necessitated outside, emergency medical intervention.  He further claimed that after he was released from the hospital, he was returned to the infirmary at SCI-Mahanoy, but while there was left in unsanitary conditions, was not provided any medical treatment or care, including pain management and therapy, which Gadra-Lord appears to claim was necessary following his serious medical incident.

Dr. Lisiak suggests that Gadra-Lord needs to do far more in order to state a claim for deliberate indifference on his part.  Thus, Dr. Lisiak argues that the amended complaint is flawed because Gadra-Lord does not plead specific facts to show how the absence of care he allegedly received rose to the level of deliberate indifference.   We disagree, since a liberal reading of Gadra-Lord's spare

allegations state that he was "never given any medical help or physical therapy or meds." (Am. Compl. ¶ 7.) Dr. Lisiak seems to be arguing that Gadra-Lord's allegations fail because he has not identified precisely what medical treatment he needed and was denied. Although we acknowledge that Gadra-Lord has included very limited allegations regarding the absence of care he received, the complaint read in its entirety suggests that the plaintiff is claiming that he suffered a very significant medical emergency, which necessitated both hospitalization and care within the infirmary, and yet he received no medical help, therapy or medication while in the prison. Although it is somewhat close, we believe Gadra-Lord's allegations of wholesale refusal of medical care are sufficient to state a claim against the doctor.

Dr. Lisiak also suggests that Gadra-Lord is simply "dissatisfied with the treatment he received," which would not constitute a violation of the Eighth Amendment. (Doc. 24, p. 11.) We do not read the complaint to say that Gadra-Lord is dissatisfied with the "treatment he received" – we read the complaint to state that he "was never given any medical help or physical therapy or meds," which is what Gadra-Lord actually alleges. According to the pleading, this is not a mere disagreement over treatment decisions; it is a claim brought alleging that the inmate received no care at all despite needing it.

27

Similarly, Dr. Lisiak cites to cases holding that a mere disagreement between an inmate and a medical professional over the exercise of professional judgment is not sufficient to state a claim under the Eighth Amendment.  We agree with this general legal proposition, but do not find that this accurately states what Gadra-Lord is alleging.  Gadra-Lord nowhere suggests that he disagrees with Dr. Lisiak's exercise of professional judgment, he claims that the doctor and others at the prison simply provided no care whatsoever.  Thus, we do not believe that this is a case where Gadra-Lord has pled facts that would call upon the court or a factfinder to second-guess a physician's medical judgment; at this point, it is simply a claim that Gadra-Lord had manifest need for medical care and received none.  Whether the plaintiff can prove such an allegation is another matter, but that is what is currently alleged.

Finally, Dr. Lisiak urges that the court interpret Gadra-Lord's allegations as asserting no more than claims of mere medical negligence, which would not arise to the level of an Eighth Amendment violation.  We recommend that the court decline to parse the complaint in the manner suggested, since Dr. Lisiak's assertion is no more than his own interpretation of the allegation, an interpretation which seems at odds with some of Gadra-Lord's averments,  and is not something that would allow resolution of Gadra-Lord's claims at this juncture.

## IV.   **RECOMMENDATION**

In summary, we do not find that Dr. Lisiak has demonstrated at this juncture that Gadra-Lord has accumulated "three strikes" that would compel the court to revoke his *in forma pauperis* status in this action.  Furthermore, we do not find that the amended complaint currently can be dismissed against this defendant on an assertion that Gadra-Lord failed to exhaust his administrative remedies.  Lastly, although we agree with Dr. Lisiak that Gadra-Lord has made very few claims that clearly implicate this defendant, we do find that he has alleged enough to support a claim for deliberate indifference, where the plaintiff is claiming that the prison physician provided no treatment, therapy or palliative care after the plaintiff had been placed in a prison infirmary following a stroke, paralysis and outside hospitalization.  It is therefore RECOMMENDED that Dr. Lisiak's motion to revoke the plaintiff's *in forma pauperis* status (Doc. 18) and motion to dismiss (Doc. 23) be denied.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the

portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of April,  2016.

/s/  Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge